OPINION OF THE COURT
Arthur E. Blyn, J.
Application by petitioner John Van Lindt, as Chairman of the New York State Racing and Wagering Board (Board) for an order pursuant to CPLR 2308 (subd [b]) providing for the issuance of a warrant to commit the respondents Jose Amy (Amy) and Con Errico (Errico) to jail until they comply with subpoenas ad testificandum by testifying at a license revocation hearing or, in the alternative, compelling them to answer certain questions thereat.
The indictment of the respondent Errico, a former jockey, in the United States District Court in the Eastern District of New York on March 21,1980 for bribing jockeys to fix races in New York in violation of the Federal RICO (Racketeer Influenced and Corrupt Organization) statute (US Code, tit 18, § 1962, subd [c]), broke a major scandal in thoroughbred horse racing. The time frame for the pattern *687 of racketeering activity alleged therein was December, 1973 through November, 1975. Errico was convicted of the charge after a jury trial on June 18,1980 which conviction was unanimously affirmed by the Second Circuit Court of Appeals on December 1, 1980. (United States v Errico, 635 F2d 152.) There is apparently pending before the Supreme Court of the United States a petition by Errico for a writ of certiorari.
Respondent Amy, a jockey, testifying under a written agreement of immunity from Federal prosecution contained in a letter from the Justice Department to his attorney dated September 12, 1979, was the government’s principal witness at the trial. Among other jockeys, one Eddie Belmonte was implicated at the trial as a participant in the group of individuals involved in the enterprise engaged in the fixing of races.
Proceeding under its statutory authority (L 1926, ch 440 as amd) the Board on December 29,1980 issued a notice of suspension of Belmonte’s license as a “Jockey Agent” and notified him of a revocation hearing. Respondents were served with subpoenas to testify at the hearing.
At hearing sessions before the Board on January 12 and 15, 1981 questions were propounded to both respondents concerning their activities and associates in racing in August, 1974 and Amy was asked a series of questions concerning his testimony at the trial in an apparent attempt to refresh his recollection. On the advice of counsel both respondents invoked their Fifth Amendment rights against self incrimination and declined to answer the questions.
The issue thus presented is whether or not such invocation was proper under the circumstances presented.
In the leading case in this area decided 30 years ago by the Supreme Court of the United States, Hoffman v United States (341 US 479), that court was called upon to determine under what circumstances a claim of the privilege against self incrimination by a witness may be rejected and the witness compelled to testify. The court held (pp 486-487): “To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it *688 is asked, that a responsive answer to the question * * * might be dangerous because injurious disclosure could result. The trial judge in appraising the claim ‘must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence’ ”. The court went on to state (p 488) that before compelling the witness to answer “[It must be] ‘perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency’ to incriminate.”
Further, in discussing the scope of the privilege that court in Zicarelli v New Jersey Investigation Comm. (406 US 472, 478) stated “It is well established that the privilege protects against real dangers, not remote and speculative possibilities”. Rejecting the so-called “likelihood of prosecution” test the Circuit Courts of Appeal have stated: “it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment privilege is not well taken” (Matter of Folding Carton Antitrust Litigation, 609 F2d 867, 871); “[the right to invoke the privilege] does not depend upon the likelihood, but upon the possibility of prosecution” (Matter of Master Key Litigation, 507 F2d 292, 293; emphasis in original); and in this Second Circuit the court answered “the novel question whether *** a witness can invoke his privilege against self-incrimination where practically there is only a slight possibility of prosecution” in the affirmative (United States v Miranti, 253 F2d 135, 139).
The general applicable standard to be applied having been stated, we turn to a consideration of whether such danger of prosecution exists requiring this court to uphold the respondents’ invocation of the privilege or, on the other hand, whether their fear of prosecution is fanciful, remote or speculative and therefore they may be compelled to answer.
In discussing those circumstances under which privilege may not be invoked Richardson, Evidence (10th ed, § 529) makes the following comment: “When the danger of prosecution has been effectively removed, the reason for the privilege against self-incrimination no longer exists and, consequently, the privilege cannot properly be asserted. *689 Thus, where the prosecution for the offense which may be disclosed is barred by the doctrine of double jeopardy, or by the statute of limitations * * * or by reason of a grant of immunity, or in any other legally effective way, the witness may be compelled to answer”.
Relying on Statute of Limitations as to both respondents and additionally double jeopardy as to Errico, this is the position taken by the Board at bar. Respondent Amy argues he is not immune from Federal prosecution, that all other possible prosecutions may not be time barred, and the answers sought could lead to prosecution for a more recent offense. Errico contends the possibility of a retrial of his case renders his invocation of the privilege valid and moreover, for reasons which he claims should only be disclosed in camera, his claim of privilege is valid.
The court finds no merit to Amy’s contention that he is subject to Federal prosecution for the substantive charge of which Errico was convicted because the immunity under which he testified at the Errico trial was “use” immunity and not “transactional” immunity. The difference between the two is clearly spelled out in Kastigar v United States (406 US 441). “Transactional” immunity affords full immunity from prosecution for the offense relating to the compelled testimony while “use” immunity, such as that provided for in section 6002 of title 18 of the United States Code, merely bars the use of the compelled testimony and evidence derived directly or indirectly therefrom. Amy contends he testified under immunity granted under the above-cited Federal statute. Section 6003 of title 18 of the United States Code contemplates a proceeding before the District Court on application by the government resulting in an order. There is no such order before this court. There is only the September 12, 1979 letter from the Justice Department which reads in paragraph 2 thereof “In exchange for the cooperation of Jose Amy *** this office agrees not to prosecute Jose Amy for his participation, if any, in any criminal activity which he discloses” (emphasis supplied) — clearly transactional immunity. The court thus concludes that Mr. Amy is immune from Federal prosecution for any substantive offense which might be disclosed relating to the activities brought out at the Errico *690 trial. Moreover, even assuming, arguendo, he were not so immune, it appears that any such prosecution would be time barred. Comparing the discussion of the Statute of Limitations problem in the Second Circuit opinion affirming the Errico conviction (United States v Errico, 635 F2d 152, 154-155, supra) with the time frame of the questions propounded to Amy at the hearing, it appears that that Statute of Limitations has run on any prosecution of Amy under RICO.
The Board correctly observes, insofar as State prosecution is concerned, that the applicable Statute of Limitations, five years or two years under CPL 30.10, has run on State crimes which Amy could apparently be charged with: sports bribing (Penal Law, § 180.40); sports bribe receiving (Penal Law, § 180.45); and, tampering with a sports contest (Penal Law, § 180.50). Amy argues, however, there may be other potential crimes involved, possibly conspiracy, which are not time barred. Whether this is so is not at all clear. Examining the Federal charge against Errico which, by its nature relies on predicate State crimes, in essence overt acts, and considering the time frame involved, any conspiracy prosecution of Amy is apparently likewise time barred. In Brill v Dodd (36 NYS2d 975), however, relied upon by Amy, the statement is made that while the Statute of Limitations had apparently run, it was reasonably possible that a conspiracy prosecution might be undertaken. The opinion contains sparse facts upon which it can be ascertained how such a conclusion was arrived at. Relying on Malloy v Hogan (378 US 1), however, Amy persuasively argues that it has not been satisfactorily demonstrated that evidence- or a link in the chain of evidence of a more recent crime not barred by the Statute of Limitations could not possibly be discovered by the line of questioning at issue. After setting forth its prime holding, that the Fourteenth Amendment makes the Fifth Amendment privilege against self incrimination applicable to the States, that court was called upon to decide whether the privilege was properly invoked in the case before it when judged by the Federal standard.
The facts in Malloy are not dissimilar to those presented at bar. The petitioner had pleaded guilty to a misdemeanor *691 in connection with a gambling raid. Subsequently, a Referee was appointed to conduct an investigation into gambling and other criminal activity in the geographical area. Petitioner was ordered to testify before the Referee and was asked a series of questions concerning the circumstances surrounding his conviction and his knowledge of a certain person. The court below ruled that since double jeopardy and Statute of Limitations barred prosecution and since petitioner failed to explain how a revelation of his relationship with the person asked about could be incriminating, the privilege had not been properly invoked. The Supreme Court disagreed, stating that:
“The conclusions of the Court of Errors, tested by the federal standard, fail to take sufficient account of the setting in which the questions were asked. The interrogation was part of a wide-ranging inquiry into crime, including gambling *** It was admitted * * * that the State desired to elicit from the petitioner the identity of the person who ran the pool-selling operation in connection with which he had been arrested in 1959. It was apparent that petitioner might apprehend that if this person were still engaged in unlawful activity, disclosure of his name might furnish a link in a chain of evidence sufficient to connect the petitioner with a more recent crime for which he might still be prosecuted.
“Analysis of the sixth question, concerning whether petitioner knew John Bergoti, yields a similar conclusion. In the context of the inquiry, it should have been apparent to the referee that Bergoti was suspected by the State to be involved in some way in the subject matter of the investigation. An affirmative answer to the question might well have * * * connected petitioner with a more recent crime” (Malloy v Hogan, 378 US 1, 13-14, supra). The court then concluded, citing its holding in Hoffman (341 US 479, supra) that the privilege should have been sustained.
The balance between a legitimate State interest and individual constitutional rights is not easily struck. There is some doubt in this court’s mind whether compelling answers to the questions at bar creates a danger of possible prosecution. Judging the facts and circumstances presented by the standards set down in Hoffman, Zicarelli, *692 Miranti, et al. (supra) that doubt must be resolved in favor of the witnesses.
The foregoing, of course, is equally applicable to Errico and it is unnecessary to consider the arguments advanced by him.
Accordingly, the motion is denied.